IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TOMMY L. BROWN,

      **Plaintiff,**

vs.                                                   No. CIV 01-1053 JHG/LCS

**CITY OF LAS CRUCES, THOMAS ENGLAND, individually and in his official capacity as an officer for the Las Cruces Police Department, and MARK PEREA, individually and in his official capacity as an officer for the Las Cruces Police Department,**

      **Defendants.**

## MEMORANDUM OPINION

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment, filed March 22, 2002 **[Doc. 20]**. Defendants move the Court for summary judgment based on qualified immunity on all counts of Plaintiff's Complaint. Having reviewed the motion, the memoranda in support and in opposition, and the applicable law, the Court finds that the motion is well taken and will be granted.

### I. Factual Background

In August of 1998, Metal Craft, a local Las Cruces business located on Picacho, was burglarized. On August 21, 1998, Larry Stevens and Robert Conway attempted to use Metal Craft checks at a local grocery store. Detective Mark Perea was on duty and assigned to investigate the incident. When Detective Perea arrived at the grocery store, Officer Scott was already on site investigating. Officer Thomas England had left the scene to contact the owner of the vehicle

Stevens and Conway were driving.  Officer England, a Neighborhood Police Officer assigned to West Picacho, recalled seeing the vehicle Stevens and Conway were driving at the Townhouse Motel.  Detective Perea interviewed several individuals at the grocery store and also contacted the owner of Metal Craft.  The owner of Metal Craft informed Detective Perea that Stevens and Conway were not his employees.  The officers took Stevens and Conway to the Las Cruces Police Department and interviewed them.  During the interview, Stevens and Conway told the officers that a black male 6 feet to 6 feet 2 inches tall going by the nickname of "Dee" had been involved with them in the burglary of Metal Craft.  Meanwhile, the owner of the vehicle informed Officer England that he had loaned the vehicle to a Christy Peña and gave him a description of the girl and what she was wearing.  The owner of the vehicle also informed Officer England that Christy had a boyfriend named Bob.

    Later that day, Officer England spotted a female matching Christy Peña's description.  The female was a passenger in a yellow Ford station wagon.  Officer England stopped the vehicle, and the passenger identified herself as Christal Peña.  Ms. Peña consented to a search of her purse and the area surrounding her in the vehicle.  The driver also consented to the search.  Officer England found a portable cell phone, a hand-held radio, a set of drawing instruments and a brown carrying case containing a Polaroid camera in Ms. Peña's purse.  These items were all property stolen during the burglary of Metal Craft.  Additionally, Officer England found several other stolen items belonging to Metal Craft in the vehicle.  Ms. Peña told Officer England she had received these stolen items from a black male whom she called "Dee."  According to Ms. Peña, Dee advised her to get rid of the items otherwise her boyfriend Bob would spend a long time in jail.  Officer England took Ms. Peña to the Las Cruces Police Department where he found an outstanding

warrant from Children's Court. Officer England took Ms. Peña to the Doña Ana County Detention Center where she was booked.

On September 10, 1998, Detective Perea contacted Officer England. Detective Perea advised Officer England that he had interviewed Stevens, Conway and Peña and all three had given independent statements to Detective Perea, describing a black male with the nickname of "Dee", "TC" and "TJ" and 6 feet to 6 feet 2 inches tall.

During the investigation, Detective Perea received information from Lieutenant Medina. Lieutenant Medina informed Detective Perea that he had attended high school with Tommy Brown. Tommy Brown fit the descriptions given by Stevens, Conway, and Peña. Additionally, Lieutenant Medina stated that Tommy Brown had been known as "TC" since at least high school. Officer England also knew that Tommy Brown frequented West Picacho and had previously been arrested by members of the Las Cruces Police Department, including Officer England, on various matters. Officer England also was aware that Tommy Brown went by the nickname of "TC" and the description provided by Detective Perea fit Tommy Brown. Based on all this information, on September 10, 1998, Detective Perea and Officer England determined there was probable cause to arrest Plaintiff. Officer England knew Plaintiff was staying at the Economy Inn Motel on West Picacho. Therefore, Officer England and another officer proceeded to the motel where they found Plaintiff and arrested him. Plaintiff denied knowing Stevens, Conway or Peña. However, when the officers allowed Plaintiff to make a call at the police department, he was overheard coaching a relative to say that it had been some time since Plaintiff had seen these individuals.

Detective Perea prepared a criminal complaint and filed it with the Magistrate Court. Thereafter, the matter was presented to a Grand Jury sitting in the Third Judicial District Court of

Doña Ana County, New Mexico. The Grand Jury determined there was probable cause and issued an indictment.

In March of 1999, an assistant district attorney informed Detective Perea that Stevens and Conway had recanted their stories and were now claiming that the black male involved in the burglary was an individual known as Tom Cauly. Ms. Peña also had recanted her story and said that the individual that had given her the stolen property was in fact "Tom Cauly." This was the first time that the officers had received information that anyone other than Tommy Brown had been the black male involved in the Metal Craft burglary. The District Attorney's Office filed a nolle prosequi against Plaintiff on March 5, 1999. Plaintiff was incarcerated from September 10 to September 17, 1998.

## II. Summary Judgment Standard

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, as well as any affidavits "show that there is no genuine issue as to any material fact . . . ." *Id.* When applying this standard, the Court examines the record and reasonable inferences in the light most favorable to the non-moving party. *Universal Money Ctrs., Inc. v. American Tel. &Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994).

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289

(1968)).  The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter.  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof.  *Universal Money Ctrs., Inc.*, 22 F.3d at 1529.  It is not sufficient "to simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  An issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing the motion. *Universal Money Ctrs., Inc.,* 22 F.3d at 1529.  The mere existence of a scintilla of evidence in support of the plaintiff's position is insufficient to defeat a properly supported motion for summary judgment.  *Id.*

### III.  Discussion

Plaintiff brought this civil rights action pursuant to 42 U.S.C. § 1983, alleging Defendants arrested him without probable cause in violation of the Fourth and Fourteenth Amendments. Plaintiff also alleges Defendants Perea and England conspired to provide false testimony to the grand jury and filed false and misleading police reports resulting in an "unfounded prosecution" in violation of 42 U.S.C. § 1985(3).

### A.  Qualified Immunity

Defendants have raised the affirmative defense of qualified immunity which protects governmental officials from damages in civil rights actions.  Qualified immunity protects "all but

the plainly incompetent or those who knowingly violate the law." *Gross v. Pirtle,* 245 F.3d 1151, 1155 (10th Cir. 2001). Moreover, the protection of qualified immunity gives officials "a right not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery.'" *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996)(quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)).

Once a defendant raises the defense of qualified immunity, the plaintiff initially bears a heavy two-part burden. *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir.1995). The plaintiff must first demonstrate that the defendant's actions violated a constitutional or statutory right and then must show that the constitutional or statutory rights the defendant violated were clearly established at the time of the conduct at issue. *Id.* In determining whether the right was clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The action alleged to have violated a right does not have to have previously been held unlawful, however, "in light of pre-existing law the unlawfulness must be apparent." *Id.* "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). Thus, to avoid summary judgment on qualified immunity grounds, a plaintiff must "'present facts which if true would constitute a violation of clearly established law.'" *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 646 (10th Cir. 1988)(quoting *Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir. 1987)).

If the plaintiff fails to carry either part of his two-part burden, the Court must grant the defendant qualified immunity. *Albright*, 51 F.3d at 1535. "Only if the plaintiff succeeds in

carrying his two-part burden, does the burden shift to the defendant. At that point, the defendant must show 'that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.'" *Id.* (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 779 (10th Cir. 1993)).

## B. Arrest Without Probable Cause

Plaintiff contends Defendants Perea and England arrested him without probable cause. As an initial matter, the Court must determine whether Plaintiff has alleged facts showing a constitutional violation. The Court analyzes the constitutionality of a warrantless arrest under the probable cause standard. *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). A police officer may arrest a person without a warrant if he has probable cause to believe that person committed a crime. *Id.* "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonable trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Id.* (quoting *Jones v. City and County of Denver*, 854 F.2d 1206, 1210 (10th Cir. 1988)). "When a warrantless arrest is the subject of a § 1983 action, the defendant arresting officer is 'entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest' the plaintiff." *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)). "Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Hunter*, 502 U.S. at 227 (quoting *Anderson*, 438 U.S. at 641).

In this case, Defendants received information from three individuals that independently described and implicated Plaintiff as the "black male" involved in the burglary of Metal Craft. After an thorough investigation of several days duration, the officers determined there was probable cause to arrest Plaintiff. It was not until several months later that Stevens, Conway and

7

Peña recanted their stories.  Defendants also relied on their own investigation.  Defendant England was familiar with Plaintiff and his background.  Defendant England knew Plaintiff frequented the area where the burglary took place.  Additionally, Defendant Perea received information from another officer that Plaintiff was known as TC.  Under the facts of this case, the Court finds Defendants had probable cause to arrest Plaintiff and are thus entitled to qualified immunity.  Having found that Defendants had probable cause to arrest Plaintiff, Plaintiff's §§ 1983 and 1985(3) claims fail. Therefore, this action is dismissed in its entirety.

    A judgment in accordance with this Memorandum Opinion will be entered.

_____
**JOE H. GALVAN**
**UNITED STATES MAGISTRATE JUDGE**